**CAUFF LIPPMAN & CO., and Arthur J. Bernstein d/b/a Amber International, Plaintiffs,**

v.

**The APOGEE FINANCE GROUP, INC., David Gould and Richard Cosse, Defendants.**

No. 90–0315–CIV–SCOTT.

United States District Court, S.D. Florida.

Sept. 5, 1990.

Karen J. Pordum, Thacher, Proffitt & Wood, New York City, Lauri Waldman. Ross, Kelly, Black, Black, Byrne, Beasley & Bales, P.A., Miami, Fla., for defendants The Apogee Finance Group, Inc., David Gould and Richard Cosse.

Andrew P. Gold, Alan J. Kluger, Kluger, Peretz, Kaplan & Berlin, P.A., Miami, Fla., Weiss & Handler, P.A., Boca Raton, Fla., for plaintiffs Cauff Lippman & Co., Arthur J. Bernstein d/b/a Amber Intern.

## MEMORANDUM OPINION

SCOTT, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). An evidentiary hearing was held on July 31, 1990. Thereafter, the parties were provided an additional opportunity to brief the jurisdictional issue presented. Having carefully reviewed the entire record and applicable case law, with particular attention to the testimony and credibility of the witnesses adduced at the evidentiary hearing, the Court is now prepared to rule on this motion.

### I. *Background*

Plaintiff Cauff Lippman & Co., Inc., a Florida corporation engaged in the business of aircraft financing, and Plaintiff Ar-

thur J. Bernstein, a Florida resident engaged in a financial consulting business known as Amber International, filed the instant action against Defendants on or about February 2, 1990. The Complaint includes causes of action for: (1) breach of contract; (2) tortious interference with a business relationship; (3) slander; and (4) fraud, in connection with an aircraft transaction: the transfer of 6 Fokker–100 aircraft to Apogee from a Netherlands Company, Koninklijke Luchtvaart Maatschappij, N.V., also known as ("KLM").

Defendant, The Apogee Finance Group, Inc. ("Apogee"), a Delaware Corporation, has its principal place of business in New York, New York. Defendant David Gould is a managing director of Apogee, who resides in New York. Defendant Richard Cosse is the managing director and chief executive officer of Apogee, who resides in Connecticut.

### II. *Motion to Dismiss*

Plaintiffs assert that the exercise of jurisdiction in this forum is consistent with both the Florida long-arm statute and Federal due process standards. To the contrary, Defendants argue that the exercise of jurisdiction is consistent with neither because the *only* contacts presented to bring this case within the jurisdiction of this Court are as follows:

1. One meeting in Florida prior to the drafting of any agreement, with [D]efendant Gould representing Apogee;

2. Telephone calls, faxes and mail exchanged between the parties in their respective jurisdictions and elsewhere; and

3. Payment allegedly to be made in Florida.

Defendants' Trial Memorandum on Constitutionality of Jurisdiction Asserted, at 1.

### III. *Legal Discussion*

Determining whether this Court may assert personal jurisdiction over Defendants entails a two-pronged analysis. First, the Court must determine whether the requirements of Florida's long-arm statute are satisfied. If these requirements are met,[1]

---

**1.** In a federal diversity action such as the

present, personal jurisdiction is determined by

the Court must further determine whether the exercise of jurisdiction comports with due process under Federal constitutional law. *Alexander Proudfoot Co. World Hqtrs. v. Thayer,* 877 F.2d 912, 914–16 (11th Cir.1989); *Noury v. Vitek Mfg. Co., Inc.,* 730 F.Supp. 1573, 1575 (S.D.Fla.1990).

■ The constitutional "touchstone" for determining whether the exercise of personal jurisdiction is consistent with due process requirements revolves around whether a defendant purposefully established "minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The focal point of minimum contact analysis turns on whether a defendant's conduct and connection with the forum state are such that he should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This requires some act by which a defendant "purposefully avails" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of its laws, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), or "purposefully ... direct[s]" his activities towards forum residents. *Burger King v. Rudzewicz, supra,* 471 U.S., at 477, 105 S.Ct., at 2184. A defendant may not be haled into a jurisdiction solely as a result of " 'random,' 'fortuitous,' or 'attenuated' " contacts. *Id.,* 471 U.S., at 486, 105 S.Ct., at 2189.[2]

■ The Supreme Court has emphasized: "it [is] the actions of the defendant *himself* that must create a 'substantial connection' with the forum...." *Johnston v. Frank E. Basil, Inc.,* 802 F.2d 418, 420 (11th Cir. 1986) (footnote and citations omitted); *see also General Electric Credit Corp. v. Scott's Furniture Warehouse Showroom,*

*Inc.,* 699 F.Supp. 907, 914 (N.D.Ga.1988). In cases such as the present, a court must look to factors such as negotiations prior to the contract's execution, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether a defendant has purposefully established minimum contacts in the forum. *Stuart v. Spademan,* 772 F.2d 1185, 1193 (5th Cir.1985); *see also Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984).

## IV. *Application to the Present Case*

■ Because the exercise of jurisdiction in this forum would unequivocally offend constitutional notions of due process, the Court's discussion will by-pass prong one of the analytical framework entirely. At the evidentiary hearing and throughout the various pleadings filed in this Court, Plaintiffs have futilely attempted to convince this Court that the "deal" was essentially locked at the meeting held in Miami, Florida. Plaintiffs rely heavily on *Williams Elec. Co., Inc. v. Honeywell, Inc.,* 854 F.2d 389, 393 (11th Cir.1988), to argue that Defendants have subjected themselves to the jurisdiction of this Court because the meeting held in Miami, Florida involved "significant negotiations of important terms" of the alleged contract. *See also Sea Lift, Inc. v. Refinadora Costarricense Petroleo, S.A.,* 792 F.2d 989, 993 (11th Cir.1989) (quoting *Neiman v. Rudolf Wolff & Co.,* 619 F.2d 1189, 1194 & n. 5 (7th Cir.1980)); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc., supra* (no purposeful availment found where similar circumstances at issue).

While Plaintiffs' argument is persuasive, it is not at all consistent with the facts as developed at the evidentiary hearing. Having carefully listened to and observed the

the law of the state in which the Federal Court sits. *Tellschow v. Aetna Cas. & Sur. Co.,* 585 F.Supp. 593 (S.D.Fla.1984); *Bloom v. A.H. Pond Co., Inc.,* 519 F.Supp. 1162, 1165 (S.D.Fla.1981). Accordingly, a non-resident defendant may not be brought before a Federal court unless jurisdiction is properly authorized pursuant to Florida's long-arm statute. *See* Fla.Stat. § 48.193 (1989).

2. *See also World–Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S., at 299, 100 S.Ct., at 568; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

demeanor of the witnesses who testified as to what transpired at the September 5, 1989, meeting, in Miami, Florida,[3] this Court, finds, without hesitation, that no "significant negotiations of important terms" took place between the parties on this occasion. The meeting was nothing more than preliminary in nature and took place at a time when the *entire structure* of the deal was yet to be determined. Arthur Bernstein, a broker, routinely called Defendants' employees in New York to inquire about potential deals. After Apogee's agent, David Gould, responded affirmatively to such an inquiry, Arthur Bernstein flew to New York to meet with David Gould. Thereafter, Bernstein suggested that a meeting take place in Miami, Florida, between Apogee representatives, Bernstein, and principals of Cauff Lippman. At the meeting, which was approximately one to two hours in length, Apogee representatives met Cauff Lippman principals for the first time. The parties never met again in Florida.

Analysis of the second alleged contact further reflects that Defendants have no "substantial connection" to this jurisdiction. While there is authority to suggest that the exchange of information by letter, telephone or telex, "may" constitute "purposeful availment" of a state's laws, *see e.g. Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596, 600 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) ("Use of the interstate telephone and mail service to communicate with a Wisconsin plaintiff, if constituting contacts supporting jurisdiction, would give jurisdiction to any state into which communications were directed.")[4], there is a substantial body of controlling case law to refute this argument as well. In *Charia v. Cigarette*

*Racing Team, Inc.*, 583 F.2d 184, 187–88 (5th Cir.1978) and *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723, 728–30 (5th Cir.1973), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1978), the Fifth Circuit[5] held that similar communications between the parties could not be characterized as purposeful activity invoking the benefits and protections of the law of the forum in question. The Fifth Circuit stressed the fact that the locus of the contract, as in the present case, was outside the forum.[6] *See also Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir.1986); *General Elec. Credit, supra,* at 907; *Groome v. Feyh,* 651 F.Supp. 249 (S.D.Fla.1986); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc., supra,* at 1029.

The only basis which remains to support the exercise of *in personam* jurisdiction concerns the payments "allegedly to be made" in Florida. However, this allegation goes no further towards demonstrating "purposeful availment." The Eleventh Circuit has emphasized:

> The district court relied on the Florida law presumption that, absent an express provision to the contrary, a debt is payable at the creditor's place of business. Even if we follow Florida law in this respect, however, we do not get appreciably nearer to purposeful availment. The actual mailing of payments to the forum state has been held not to weigh heavily in this determination.... A presumptive duty regarding place of payment under forum law is entitled to no greater weight here.

*Sea Lift, Inc. v. Refinadora Costarricense, supra,* at 994; *see also* note 6, *supra.* Moreover, based on the testimony presented, it is doubtful whether the pay-

---

3. The Court specifically credits the testimony of David Gould in this regard.

4. *See also Madison Consulting Group v. State of S.C.,* 752 F.2d 1193 (7th Cir.1985) (also addresses split of authority in the Circuits).

5. Decisions of the former Fifth Circuit decided through September 30, 1981, are binding on this

Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

6. In the above cited cases the Fifth Circuit also found "that the location of the completion of the contracts in question, accomplished by mailing payments to the forum, was *not* controlling as the location where payment is sent is often fortuitous." *General Elec. Credit, supra,* at 913 (citations omitted).

ments would ever be directed to Florida anyway.

In passing on the issue jurisdictional issue presented, the Court further finds that the contract at issue was ultimately executed in New York and by its own terms, New York law was to govern. Additionally, a New York bank was used. The transaction was an isolated transaction as Apogee conducts no business in Florida whatsoever. Apogee has no business office, property, or agent located in Florida, nor does Apogee own or lease property in Florida. Apogee did not solicit business in Florida on this occasion or any other. Apogee does not make offers of sale to the general public in Florida and has no bank accounts in Florida. The only real "contacts" at issue are one preliminary meeting and a series of telephone calls and telecopies between New York and Florida. Moreover, Plaintiffs—not Defendants—induced selection of the meeting place in Florida. Accordingly, the Court finds in the record before it "a total absence of those affiliating circumstances that are a necessary predicate to any exercise of ... jurisdiction." *World–Wide Volkswagen v. Woodson, supra,* 444 U.S., at 295, 100 S.Ct., at 566.[7]

### V. *Motion to Transfer*

■ As an alternative to their motion to dismiss, Defendants seek to transfer this action pursuant to Title 28 U.S.C. § 1404(a).[8] While the Court has considered dismissing the case, the more appropriate alternative is the one suggested by Defendants. Service of process has already been effectuated; preliminary discovery has been accomplished, and dismissal will lead only to the unnecessary duplication of fees and costs. Because neither jurisdiction nor venue lie in this forum, the Court shall instead, in the interest of justice, transfer the case to the United States District Court for the Southern District of New York pursuant to Title 28 U.S.C. § 1406(a).[9]

Accordingly, after careful consideration, the Court:

ORDERS AND ADJUDGES that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is DENIED. The Court further

ORDERS AND ADJUDGES that this cause is transferred to the United States District Court for the Southern District of New York. The Clerk of this Court shall forthwith TRANSMIT this case and all the records pertaining thereto to the Clerk of the Court of the Southern District of New York.

DONE and ORDERED.

---

7. Parenthetically, we note that the findings are based on a preliminary evidentiary hearing. We, of course, must observe that following more extensive discovery, additional and perhaps, contrary facts may come to light. Accordingly, these findings are not intended to be binding on the United States District Court for the Southern District of New York.

In conclusion, the Court also notes that as to Plaintiffs' claim, in Count IV of the Complaint, against Defendant Richard Cosse, in his individual capacity, *Bloom v. A.H. Pond Co.,* 519 F.Supp. 1162, 1171 n. 8 (S.D.Fla.1981) is controlling. Under *Bloom,* where non-resident corporate employees take action which can only be on behalf of the corporation, they are not amenable to jurisdiction in their individual capacity.

8. In deciding whether a transfer is appropriate under this provision, a Court must decide (1) whether the proposed transferee court is one in which the action "might have been brought; and (2) whether the transfer is warranted "for the convenience of the parties and witnesses, [and] in the interest of justice." *Cordis Corp. v. Siemens–Pacesetter, Inc.,* 682 F.Supp. 1200, 1201 (S.D.Fla.1987).

9. Under this provision, a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."